IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ANALYTICAL TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C. A. No. 2:24-cv-00056-JRG-RSP |
| | § | |
| ZAXBY'S FRANCHISING LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**ZAXBY'S FRANCHISING LLC'S**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

I.    STAGE AND NATURE OF PROCEEDINGS ................................................. 5

II.   SUMMARY OF THE ARGUMENT ............................................................. 5

III.  STATEMENT OF THE ISSUE.................................................................... 6

IV.   STATEMENT OF THE FACTS ................................................................... 7

V.    LEGAL STANDARDS ............................................................................... 8

      A.    Legal Standard for Dismissal Pursuant to Federal Rule of Civil Procedure
            12(b)(6) ...................................................................................... 8

      B.    The Law of 35 U.S.C. § 101 .............................................................. 10

VI.   ARGUMENT ......................................................................................... 11

      A.    The '083 Patent is Invalid Under 35 U.S.C. § 101 ............................... 12

            1.    *Alice* Step 1: The '083 Patent is directed to the abstract idea of
                  paying for a restaurant service using a mobile phone.............................. 12

            2.    *Alice* Step 2: No inventive concept to transform the abstract idea
                  into patent-eligible subject matter is disclosed ......................................... 18

            3.    All the claims of the '083 Patent are abstract and contain no
                  "inventive concept"................................................................... 22

VII.  CONCLUSION....................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advanced Cardiovascular Svs. v. SciMed Life Svs.,* 988 F.2d 1157 (Fed. Cir. 1993) ...................................................................................................................... 9

*Affinity Labs of Tex., LLC v. Directv, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) .................. 12, 13, 19

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, No. 1:21-cv-01458-RGA, 2024 U.S. App. LEXIS 8042 (Fed. Cir. Apr. 14, 2024) ................................................... passim

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) .......................................... passim

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 8, 9

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013) ......................... 10

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266 (Fed. Cir. 2012) ........................... 9

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) .................................................................................................................. 20

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................................................................................................................... 9

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) .................................................. 17, 19, 21

*Bilski v. Kappos*, 561 U.S. 593 (2010) .............................................................................. 9, 10, 11

*Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528 (Fed. Cir. 2021) ........................ 14, 20, 21

*Breen v. Tex. A&M Univ.,* 485 F.3d 325 (5th Cir. 2007) .............................................................. 8

*BSG Tech LLC v. Buyseason, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ........................................... 19

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) .............................................. 11

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) .................... 6, 15, 16, 20

*Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014) .............................................................................................................. 11

*Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014) .............................................................................................................. 17

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) .................................................................................................................. 14

*Diamond v. Diehr*, 450 U.S. 175 (1981) ................................................................................ 11

*Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733 (D. Del. 2018) (Bryson, J.) ................. 6, 17

*Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) ....................................... 12

*Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012) ............................. 11

*Franklin v. North Cent. Narcotics Task Force*, No. 5:15-cv-120-DCB-MTP, 2016
    U.S. Dist. LEXIS 88098 (S.D. Miss. July 7, 2016) ................................................................. 9

*Free Stream Media Corp. v. Alphonos Inc.*, 996 F.3d 1355 (Fed. Cir. 2021) ............................. 12

*Gottschalk v. Benson*, 409 U.S. 63 (1972) ................................................................................ 10

*In re TLI, Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) ......................... 15, 19, 20

*Innovation Scis., LLC v. Amazon.com, Inc.*, 778 F. App'x 859 (Fed. Cir. 2019) .............. 5, 13, 14

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ....................... 16

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F. 3D 1372 (Fed. Cir.
    2017) ....................................................................................................................................... 11

*Jackson v. United States HUD*, 38 F.4th 463 (5th Cir. 2022) ...................................................... 8

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829 (E.D.
    Tex. 2014) .............................................................................................................................. 17

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66
    (2012) ......................................................................................................................... 6, 10, 11

*Parker v. Flook*, 437 U.S. 584 (1978) ...................................................................................... 11

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP,
    2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ........................................................................ 17

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ........................................ 9, 12

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) ..................... 22

*Simio, LLC v. Flexsim Software Prods. Inc.*, 983 F.3d 1353 (Fed. Cir. 2020) ............................. 9

*Teague v. Norcold, Inc.*, 774 F.Supp.2d 817 (N.D. Tex. Feb. 10, 2011) ...................................... 8

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ................................... 13, 18, 23

**Statutes**

35 U.S.C. § 101 .................................................................................................................... passim

**Rules**

Rule 12(b)(6) ....................................................................................................................... passim

## I.      STAGE AND NATURE OF PROCEEDINGS

On January 26, 2024, Plaintiff Analytical Technologies LLC ("Analytical Technologies" or "Plaintiff") filed this lawsuit against Defendant Zaxby's Franchising LLC ("Zaxby's" or "Defendant") accusing Zaxby's of infringing U.S. Patent No. 8,799,083, entitled "System and Method for Managing Restaurant Customer Data Elements" (the "'083 Patent" or "Asserted Patent"). Analytical Technologies accuses Zaxby's mobile application of infringing at least Claim 1 of the '083 Patent. (Dkt. 1-1 at ¶¶ 37–56).

## II.     SUMMARY OF THE ARGUMENT

The claims of the Asserted Patent are directed to an abstract idea and are therefore unpatentable. *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, No. 1:21-cv-01458-RGA, 2024 U.S. App. LEXIS 8042 (Fed. Cir. Apr. 14, 2024). More particularly, the claims of the Asserted Patent are directed to the abstract idea of paying for a restaurant service using a mobile phone. The Federal Circuit has held that similar services are abstract ideas ineligible for patenting. *See Innovation Scis., LLC v. Amazon.com, Inc.,* 778 F. App'x 859 (Fed. Cir. 2019) (holding that the "online method for a payment server to support online buying over the Internet" is an abstract idea). Moreover, the claims of the Asserted Patent do not contain any inventive concept sufficient to confer patent eligibility on the claimed abstract idea.

The Asserted Patent claims abstract ideas and simply describe a way of paying for a restaurant service using a mobile phone, and the claims suggest using a computer to accomplish this idea would allow a customer to avoid interacting with the "staff associated with the restaurant." (Dkt. 1, '083 Patent, Cl. 1.) Payment for a service that does not require interaction between the customer and the service provider is widely known and has existed well before the Asserted Patent. The '083 Patent admits as much, wherein the Asserted Patent specifically lists online payment methods already in existence as of the priority date of the patent. *Id*. at Col. 7, ll. 14-25. As an

example, the '083 Patent cites "PayPal" as a known method of payment for transactions. *Id*. at Col. 7, ln. 20.  As another example, customers used Ticketmaster and Moviefone to purchase tickets to events and movies well before the priority date of the '083 Patent.  The claims of the Asserted Patent claim nothing new and instead simply leverage generic mobile phones to perform conventional computing functions and therefore do not contain any inventive concept sufficient to confer patent eligibility.

The claims of the Assert Patent do not teach any nonconventional system or apparatus to resolve the problem Asserted Patent owner identified.  Similarly, the claims do not (nor does the specification) describe any particular improvement to the generic computing systems or the mobile phone claimed. Claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018) (Bryson, J.). The claims of the Asserted Patent are only directed to an abstract concept and do not include a specific implementation of said concept. For this reason, the claims are invalid for failure to claim patent-eligible subject matter.

In the interest of justice, Zaxby's therefore requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  Doing so would avoid unnecessarily wasting the Court's time, as well as each of the parties' time and resources, in litigating an invalid patent.

## III.  STATEMENT OF THE ISSUE

Under 35 U.S.C. § 101, abstract ideas are ineligible for patentability absent an inventive concept that amounts to significantly more than the abstract idea.  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 72 (2012).  Here, the claims of the Asserted Patent are directed to the abstract idea of paying for a restaurant service using a mobile phone without

interacting with the restaurant staff.  The claims of the Asserted Patent do not include any inventive concept beyond the aforementioned abstract idea.  Accordingly, the Court should dismiss Analytical Technologies' Complaint pursuant to Rule 12(b)(6).

## IV.   STATEMENT OF THE FACTS

The Asserted Patent relates to "customer service management systems and methods, and more specifically to restaurant customer service management systems and methods." (Dkt. 1-1, '083 Patent, Col. 1, ll. 21-24.)  The "problem" that the '083 Patent purports to resolve, is related to restaurant systems, more particularly, the '083 Patent provides:

> Current restaurant systems, although proven, do not meet the changing needs of this new customer base.  Restaurants antiquated systems are cumbersome, lack modern technology, and do not provide entertainment during waiting periods. Furthermore, they are very dependent on management and control from restaurant staff.

*Id*. at Col. 1, ll. 47-54.  Accordingly, the purported goal of the alleged invention is to provide "new methodologies for managing the customer experience . . . to meet the changing needs." *Id*. at Col. 10, ll. 24-25.  Despite claiming a simple transaction method, the specification acknowledges that "online payment service[s], such as PayPal," that address much of the "antiquated systems" the Asserted Patent purports to revolutionize, were known in the industry. *Id*. at Col. 7, ll. 19-20.

The '083 patent has twenty claims including independent claims 1, 11 and 16.  The independent claims are of similar scope, in that they each involve restaurant bill review and payment without interaction with the restaurant staff.  Claims 1 and 16 are directed to methods while Claim 11 is directed to a system.  Claims 1 and 11 allegedly claim uploading a bill to a mobile or wireless handheld device and paying said bill without interaction with the restaurant staff.  Claim 16 also includes payment of a bill without interaction with the restaurant staff but further includes a step of splitting the bill.  Claim 1, reproduced below, is representative:

**1.**     A method, comprising:

> receiving at least one request of at least one service related to a restaurant menu from a mobile phone;
>
> uploading, by a system of a restaurant, a bill for the at least one service to the mobile phone; and
>
> performing a self-checkout by a at least one customer whereby payment for the at least one service is submitted by the at least one customer via the mobile phone to the system, wherein the payment is submitted without interaction with staff associated with the restaurant.

(Dkt. 1-1, '083 Patent, Cl. 1 ("Claim 1".)  The representative Claim 1 describes the basic and longstanding practice of paying for a restaurant service using a mobile phone without interacting with the restaurant staff.  Furthermore, the claimed method does so using only generic, routine, and conventional computing concepts and equipment like generic mobile phones and a generic encryption protocol.  The basic allegedly claimed steps are: (1) receiving a request for a restaurant service from a mobile phone, (2) uploading a bill for the service, and (3) paying for the service without interacting with the restaurant staff.

## V.    LEGAL STANDARDS

### A.    Legal Standard for Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") if the complaint lacks sufficient facts, that taken as true, fail to "state a claim to relief that is plausible on its face." *See Jackson v. United States HUD*, 38 F.4th 463, 466 (5th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).)  "Courts are compelled to dismiss claims based upon invalid legal theories even though they might otherwise be well-pleaded."  *Teague v. Norcold, Inc.*, 774 F.Supp.2d 817, 820 (N.D. Tex. Feb. 10, 2011) citing *Breen v. Tex. A&M Univ.*, 485 F.3d 325, 336 (5th Cir. 2007). Courts in the Fifth Circuit have acknowledged that Rule 12(b)(6) "serves the tantamount purpose of 'allowing the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of

unnecessary pretrial and trial activity.'" *Franklin v. North Cent. Narcotics Task Force*, No. 5:15-cv-120-DCB-MTP, 2016 U.S. Dist. LEXIS 88098, *7 (S.D. Miss. July 7, 2016) (quoting *Advanced Cardiovascular Svs. v. SciMed Life Svs.,* 988 F.2d 1157, 1160 (Fed. Cir. 1993).) Similarly, in *Advanced Cardiovascular Svs. v. SciMed Life Svs.,* the Federal Circuit held that "[a] motion made under Rule 12(b)(6) challenges the *legal theory* of the complaint, not the sufficiency of any evidence that might be adduced." (emphasis added) *Advanced Cardiovascular Svs.*, 988 F.2d at 1160 (emphasis added).  To survive a motion to dismiss under Rule 12(b)(6), "plaintiffs must plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The courts accept all well-pled factual allegations as true, but plaintiffs "must allege a plausible entitlement to relief in order to withstand the motion." *Twombly*, 127 S. Ct. at 1967–69. Similarly, "[c]onclusory allegations" on the part of a patentee, "cannot defeat a motion to dismiss." *AI Visualize, Inc.,* 2024 U.S. App. LEXIS 8042, at * 10-11 citing *Simio, LLC v. Flexsim Software Prods. Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).

Under 35 U.S.C. § 101, patentability is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage and may be resolved via a Rule 12(b)(6) motion "where the undisputed facts, considered under the standards required by [Rule 12(b)(6)], require a holding of ineligibility under the substantive standards of law." *AI Visualize, Inc.,* 2024 U.S. App. LEXIS 8042, at * 10-11 (quoting *SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).)  Additionally, the Federal Circuit has held that "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs. L.L.C. v. Sun Life Assur. Co*., 687 F.3d 1266, 1273 (Fed. Cir. 2012).

### B.      The Law of 35 U.S.C. § 101.

Four categories of patentable subject matter are disclosed in Section 101 of the Patent Act, including: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013). Abstract ideas are ineligible for protection because a monopoly over these ideas would prevent their use in all fields. *See Bilski*, 561 U.S. at 611–12. "…[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps (the "*Alice* test"). First, the Court must determine "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.* 566 U.S. 66, 72 (2012).) Further, "[a] claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]'." *Id.* More specifically, the Supreme Court defined the "inventive concept" as "—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Furthermore, the use of a generic hardware or computer technology to perform well-understood, routine, and conventional activities

commonly used in industry, does not make a claim patent eligible." *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F. 3D 1372 (Fed. Cir. 2017) (holding payment method using basic concepts to be abstract and lack any inventive concept).  Further, if a claim imports only a token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment, said claim is not meaningfully limited. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Lastly, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope."). While factual allegations are generally presumed true within the realm of a Rule 12(b)(6) inquiry, any such allegations about the inventive nature of the claims cannot be "wholly divorced from the claims or the specification." *Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1317 (Fed. Cir. 2019).

## VI.    ARGUMENT

The claims of the Asserted Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test.  First, each of the claims are directed to the abstract idea of paying for a restaurant service using a mobile phone without interacting with the restaurant staff.  Abstract ideas are not eligible for patenting.  Second, none of the claims contain an "inventive concept sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the ineligible concept itself." (emphasis added) *Alice*, 134 S. Ct. at 2355.  Because the Asserted Patent is not directed to patent eligible subject matter, a threshold legal issue, Plaintiff Analytical

Technologies has failed to present a claim for which relief may be granted and Zaxby's respectfully requests that the Court dismiss this case with prejudice. FED. R. CIV. P. 12(b)(6).

**A.      The '083 Patent is Invalid Under 35 U.S.C. § 101**

**1.      _Alice_ Step 1: The '083 Patent is directed to the abstract idea of paying for a restaurant service using a mobile phone.**

Claim 1 is directed to the abstract idea of paying for a restaurant service using a mobile phone.  To determine whether Claim 1 is direct to an abstract idea, the analysis begins by examining the "focus" of the claim, _i.e._, its "character as a whole." _SAP Am., Inc._, 898 F.3d at 1167.  The Court should "determine if the claim's character _as a whole_ is directed to ineligible subject matter by considering the claim limitations that are purported to describe the claimed advance over the prior art." _AI Visualize, Inc_., 2024 U.S. App. LEXIS 8042 at *11 (quoting _Free Stream Media Corp. v. Alphonos Inc_., 996 F.3d 1355, 1362 (Fed. Cir. 2021).)  It is necessary to examine a patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." _Finjan, Inc. v. Blue Coat System, Inc._, 879 F.3d 1299, 1303 (Fed. Cir. 2018).  To determine where the claims are _directed to_, a court should strip away "excess verbiage." _Affinity Labs of Tex., LLC v. DIRECTV, LLC_, 838 F.3d 1253, 1256 (Fed. Cir. 2016). Here, the '083 Patent is directed to paying for a restaurant service using a mobile phone. (Dkt.1-1, '083 Patent, Cl. 1.)  In simple terms, the applicant claimed the use of known technology, which claims no advancement over the prior art, to pay for restaurant services using a mobile phone.

Paying for a restaurant service has necessarily existed as long as restaurants have been in business.  Using a mobile phone to make payments, as the patent specification admits, is also a known technology.  Specifying that making such payment without interacting with the restaurant staff is implied by the availability of payment systems like PayPal, which would not require interaction with staff.  Essentially, the patent claims the fundamental human activity of not _directly_

paying another human for services.   Performing self-checkout and online bill payment through a mobile device as in Claim 1 is an abstract idea.  The Complaint at paragraph 33 only provides a bare assertion that processing an order for food without involvement of restaurant staff is not abstract which falls well short of what is needed to show that representative Claim 1 is not directed to an abstract idea.

In this case, the Court should find the Federal Circuit's decision in *Innovation Sciences, LLC v. Amazon.com, Inc.*, highly instructive.  *Innovation Scis., LLC v. Amazon.com, Inc.*, 778 F. App'x 859, 871 (Fed. Cir. 2019).   In *Innovation*, the Federal Circuit held claims directed to "securely processing a credit card transaction with a payment server" to be abstract.  *Innovation Scis.,* LLC, 778 F. App'x 859, 863.   In *Innovation*, the claims at issue involved using online payment systems to securely pay for a transaction. *Id.* at 863.  The *Innovation* claims are much like Claim 1 of the Asserted Patent, in which a customer uses a mobile phone to pay for a bill. (Dkt. 1-1, '083 Patent, Cl. 1; Col. 2, ll. 7–58.)  The Federal Circuit held that the claims were "an idea, having no particular concrete or tangible form." *Innovation Scis., LLC v. Amazon.com, Inc*., 778 F. App'x at 863 (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014)). The Federal Circuit explained further that the "recitation of servers and an established financial channel serves to 'limit[ ] the field of use of the abstract idea to a particular existing technological environment,' but it 'does not render the claims any less abstract.'" *Innovation Scis., LLC v. Amazon.com, Inc*., 778 F. App'x 859, 863 (Fed. Cir. 2019) (*citing Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d at 1259).  Here, similarly, Claim 1 is simply directed to using a known technological environment —a mobile device— to pay for restaurant bill without interacting with the anyone at the restaurant, *i.e*. an idea without a tangible form that is only limited in that it is used on mobile phones. (Dkt. 1-1, '083 Patent, Cl. 1.)

The *Virginia Innovations* court further addressed what constitutes "a specific improvement in the capabilities of computing devices." *Innovation Scis., LLC v. Amazon.com, Inc*., 778 F. App'x 859, 863 (Fed. Cir. 2019) (*citing Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc*., 880 F.3d 1356, 1361 (Fed. Cir. 2018)).  The Federal Circuit found that alleged invention does not "improve the payment server or the server on which the item for purchase is listed. Instead, it simply claims the idea of switching to a more secure server for payment processing.  Neither the claims nor the specification recites any specific way to carry out such a switch*." Innovation Scis., LLC v. Amazon.com, Inc.*, 778 F. App'x 859, 863 (Fed. Cir. 2019) The same is true here, the alleged invention does not improve mobile phones or payment systems, the invention simply claims the idea of using a mobile phone to pay a restaurant bill without interacting with restaurant staff.

Other recent cases have found similar online payment systems and methods to be patent ineligible.  The court in *Boom! Payments* analyzed claims directed to "payment escrow." *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528 (Fed. Cir. 2021). The court specifically found that "the claims are reminiscent of those at issue in *Alice*" because the claim described the use of a third party to facilitate payments. *Id*. at 532.  Hence, the court found that the claims, where "payment is held by the third-party Internet-based computer system and released to the seller only upon the fulfillment of a condition" to be directed to an abstract idea, as the claims "only explicate the necessary steps of an escrow arrangement and do not change the direction of the claims." *Id*. Further, the court in *Boom! Payments* also found that the claims did not improve computer functionality. *Id.*  Here, Claim 1 is similar to those claims found invalid in *Boom! Payments* because they are directed to using a computing device to make a payment using an intermediary without interaction with the other party to the transaction.  In addition, the Asserted Patent describes and allegedly claims uses of conventional components and nowhere claims or discloses

any improvement in computer functionality. *See generally* Dkt. 1-1, '083 Patent, Cl. 1. The claims of the Asserted Patent are also directed to an abstract idea.

Claim 1 is directed to the abstract idea of paying for a service.  The claim recites generic hardware including "a mobile phone" and "a system." (Dkt. 1-1, '083 Patent, Cl. 1.)  Nothing in the claim language is directed to improving the functioning of any of the hardware from a **technical** standpoint, which is why the claimed components are described "in vague terms without any meaningful limitations." *In re TLI, Commc'ns LLC Patent Litig*., 823 F.3d 607, 612–13 (Fed. Cir. 2016) ("the focus of the patentee and of the claims was not on" improved hardware because the specification described the functionality of the hardware "in vague terms without any meaningful limitations").

The Federal Circuit's decision in *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) instructive. The claims in *ChargePoint* were directed to a communication network to enable finding a recharging facility, controlling the facility, and paying for the electricity consumed. *Id*. at 766.  However, the claim described the process only in high-level functional terms, *i.e.*, "a control device to turn electric supply on and off" and "a transceiver to communicate requests." *Id*.  The specification never suggested that the charging station would operate differently or that it was "improved from a technical standpoint." *Id*. at 768. Accordingly, the Federal Circuit concluded that the risk of preemption was high because the broad claim language "would cover *any* mechanism for implementing network communication on a charging station." *Id.* at 770 (emphasis added.)  The Federal Circuit further noted that, "[e]ven if ChargePoint's specification had provided, for example, a technical explanation of how to enable communication over a network for device interaction (which, as discussed above, it did not), the claim language here would not require those details." *Id*. at 769–70.  Similar to *ChargePoint*, the claims of the '083

Patent fail to disclose the details of how to implement a system paying for a restaurant service using a mobile phone without interacting with the restaurant staff.  Instead, the Asserted Patent describes the system only at a high level of generality.  For example, the system of the representative Claim 1 functions in "uploading, by a system of a restaurant, a bill for the at least one service to the mobile phone." (Dkt. 1-1, '083 Patent, Cl. 1.)  But nothing in Claim 1 explains how the mobile device must be programmed, or what application must be downloaded, to upload the bill from the system. Moreover, nothing suggests that  the mobile device or any other component is "improved from a technical standpoint." *See ChargePoint*, 920 F.3d at 768.  The Federal Circuit noted, when analyzing claims pertaining to computer technologies, under step one of *Alice*, "[i]n the realm of computer-related technology, patent claims may be non-abstract at step one if the focus of the claimed advance is on an *improvement in computer technologies*, rather than the mere use of computers."  *AI Visualize, Inc.*, 2024 U.S. App. LEXIS 8042 at *11 (emphasis added).  Said differently, here the broad claim language only covers the resulting system the applicants envisioned, but not how to achieve it, nor any improvement to mobile phone-related technologies. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation.").

Because the Asserted Patent claims only the desired result (paying for a service using a mobile phone without interacting with staff) and fails to describe any specific means for doing so, Claim 1 of the '083 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348 and *AI Visualize, Inc.*, 2024 U.S. App. LEXIS 8042 at *14.  As such, Claim 1 risks preempting *all* methods or systems for paying for a restaurant service using a mobile phone without interacting with the restaurant staff. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am.*

*Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective").  The Complaint at paragraphs 34-35 only heightens the preemptive concern to order processing because Analytical Technologies' conclusory statement identifies no alternative ways of using a mobile phone and only makes a vague reference to using a remote terminal as an alternative.  The law is clear that claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018). The Federal Circuit confirmed the same in *AI Visualize, Inc.,* where the Court held the asserted claims were directed to an abstract idea because "[t]here is no recitation in the claim about how to create [the claimed subject matter], much less in a manner that would meaningfully support a technical solution to a technical problem in the prior art." *AI Visualize, Inc*., 2024 U.S. App. LEXIS 8042, at *14.  As such, Claim 1 is ineligible for patentability.

Claim 1 fails *Alice* step one because it is directed to a patent-ineligible abstract idea. *Alice*, 134 S. Ct. at 2355.  Because all the claims of the Asserted Patent are "substantially similar and linked to the same abstract idea[,]" Claim 1 is representative of all the claims in the '083 Patent. *See Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (holding that district court's analysis of representative claims was appropriate where claims were "substantially similar and linked to the same abstract idea").[1]  Accordingly, all the claims of the '083 Patent are directed to an abstract idea.

---

[1] *See also Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (holding that claims may be treated as "representative" in a § 101 inquiry if a patentee

**2.**     ***Alice* Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed.**

Because Claim 1 of the '083 Patent is directed to an abstract idea, the Court must next analyze whether Claim 1 contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted).  To be successful in this test, Claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted).  In this case, Claim 1 is generic and broad and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea the Claim expresses.

As disclosed above, the Asserted Patent purports that "current restaurant systems, although proven, do not meet the changing needs of this new customer base.  Restaurants antiquated systems are cumbersome, lack modern technology, and do not provide entertainment during waiting periods." (Dkt. 1-1, '083 Patent, Col. 1, ll. 64–66.) The Asserted Patent further provides that current systems "are very dependent on management and control from restaurant staff." *Id*.  The Applicant thus proposed solution to the "antiquated systems" independent of interacting with restaurant staff.  (*Id*. at Col. 10, ll. 23-27.)  The purported solution, however, is claimed and executed by way of the conventional application of generic means.  There is no unconventional feature or activity disclosed in representative Claim 1.  This is especially true given that no special programming or improved component is claimed.  Claim 1 discloses only that the functionality of paying can be done using a mobile phone, is a "mobile phone" and a "system of a restaurant." *Id*.

---

does not make a "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim."   Nowhere in the Complaint does Analytical Technologies attempt to argue that limitations of claims 2-20 of the '083 Patent have any "distinctive significance" such that Claim 1 would not be representative of all the Claims.

In addition, none of the claim limitations disclose an inventive concept.  The first limitation recites receiving a request for service related to a restaurant menu.  The second limitation recites uploading a bill for the service to a mobile phone.  And the third limitation recites performing a self-checkout without interacting with the restaurant staff.  These are the same methods for ordering an item from eBay, going to the checkout page, and paying for it using PayPal, the process is completely free of any interaction with any eBay "staff."  Hence, Claim 1 does not disclose an inventive concept.

Moreover, Claim 1 is devoid of any technical explanation as to *how* to implement the purported invention. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). "At *Alice* step two, it is [thus] irrelevant whether [paying for a restaurant service using a mobile phone without interacting with the restaurant staff] may have been non-routine or unconventional as a factual matter." *BSG Tech LLC v. Buyseason, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (claims lacked an inventive concept because they "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components"); *Affinity Labs of Tex.*, 838 F.3d 1262 (claim lacked an inventive concept because it "simply recites the use of generic features . . . as well as routine functions . . . to implement the underlying idea").  Adding generic functionality to an existing mobile device does not amount to an inventive concept as a matter of law. *See Alice*, at 2359-60.

When the limitations of Claim 1 are viewed in combination, the outcome is no better.  The '083 Patent Applicant fails to describe how the claimed system "is a *technical* improvement over prior art." *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (emphasis added). The Applicant seeks only to allow a customer to pay a restaurant bill without interacting with the restaurant staff. (Dkt. 1-1, '083 Patent, Cl. 1.)  The Asserted Patent does so by uploading a bill to a mobile phone and allowing the customer to do a self-checkout. *See id*.  This merely adds generic payment functionality to the mobile device.  *See ChargePoint*, 920 F.3d 759, 774-75 (rejecting plaintiff's reliance on *Bascom* because the claims "do not improve the technology" but instead "merely add generic networking capabilities to [the claimed components] and say 'apply it'".); *see AI Visualize, Inc*., 2024 U.S. App. LEXIS 8042, at *18 (holding that the patentee's claims that the "virtual views" are created "'on the fly'" without more, cannot support patent eligibility at *Alice* step two.")  Considering the limitations in combination "add[s] nothing . . . that is not already present when the [limitations] are considered separately." *Alice*, 134 S. Ct. at 2359 (internal brackets and quotation marks omitted).  Use of mobile device and adding generic payment functionality to said mobile device is far from "inventive."  Claim 1 lacks any technical explanation as to how to implement the invention and thus provides no inventive concept. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention").

Here again, the *Boom! Payments* case is instructive.  In *Boom! Payments*, the Federal Circuit analyzed the similar payment related patent claims under the second step of *Alice* and found that they did not disclose an inventive concept. *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x

528 at 533 (Fed. Cir. 2021*).*  The Federal Circuit specifically noted that "allegations that the limitations of its claims are not routine or conventional do not preclude dismissal under Rule 12(b)(6)." *Id.*  The court also noted that when the "order and timing of the claim elements are merely the necessary steps of executing payment escrow [, they] do not constitute an inventive concept." *Id.*  Thus, the Federal Circuit concluded that the patents at issue in *Boom! Payments* "do not recite an inventive concept sufficient to transform the claims into patent-eligible subject matter." *Id.*  Similarly here, the claims of the Asserted Patent are directed to conventional payment technology and recite only generic mobile phone and server capabilities for performing the conventional steps of making a payment to a restaurant. (Dkt. 1-1, '083 Patent, Cl. 1.)  Thus, the claims of the '083 patent fail to disclose an inventive concept.

Unlike *Berkheimer*, the case at issue does not present any factual disputes requiring resolution before the Court can decide this § 101 issue.  In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer*, 881 F.3d at 1369.  The Federal Circuit examined whether the improvements described in the specification were included in the claims. The Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities" for those claims where the inventive feature in the specification was "captured in the claims."  *Id.*  However, where the claims did not recite the supposedly inventive features described in the specification, the Federal Circuit held that they were directed to patent ineligible subject matter under § 101. *Id.*  Alternatively, here, there is no need for fact discovery at all because neither Claim 1 nor the specification of the Asserted Patent describes any unconventional components or the use of generic components in some unconventional manner.  Discovery will not change that.

As discussed above, the purported innovation of Analytical Technologies' claims is the *idea* of paying for a restaurant service using a mobile phone without interacting with the restaurant staff. (Dkt. 1-1, '083 Patent, Cl. 1.)  However, Claim 1 of the '083 Patent does not describe any mechanism, with particularity or otherwise, for achieving the result.  *See Secured Mail Sols., LLC v. Universal Wilde, Inc.,* 873 F.3d 905, 912 (Fed. Cir. 2017) (claims fail in *Alice* step two where "[t]he claim language does not provide any specific showing of what is inventive about the [limitation in question] or about the technology used to generate and process it").  The recited limitations—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea.  Because it is altogether bereft of any "inventive concept," Claim 1 of the '083 Patent is thus patent ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

### 3.    All the claims of the '083 Patent are abstract and contain no "inventive concept."

The remaining claims of the Asserted Patent recite the same abstract idea: paying for a restaurant service using a mobile phone without interacting with the restaurant staff.  Evident from the language of the claims, the remaining independent claims of the Asserted Patent are substantially similar to representative Claim 1 for purposes of subject matter eligibility. Independent Claim 11 is a system claim reciting essentially the same subject matter of Claim 1 cast in system language but adds nothing further to render the claim subject matter eligible.  (Dkt. 1-1, Cl. 11.)  Similarly, method Claim 16 recites steps directed to splitting a bill balance and paying first and second bills without staff interaction which also fails to render the claim subject matter eligible. (*Id*. at Cl. 16.) Because these independent claims cannot be meaningfully distinguished from Claim 1 of the '083 Patent, they are ineligible for the same reasons.

The dependent claims are in the same boat.  The only differences relate to *token* or *insignificant pre- or post-solution activity*—for example, putting customers on a wait list (Claims 2 and 6), providing a post-dining survey (Claim 9), and paging (Claim 3). *See Ultramercial*, 722 F.3d at 1346 ("claim . . . will not be limited meaningfully if it contains only insignificant or token pre or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment").  All the dependent claims are written in the same or similar high-level of generality and genericity as in Claim 1 of the '083 Patent. None of these limitations is sufficient to raise the claims beyond the abstract idea to which they are directed.

Like Claim 1 of the '083 Patent, the limitations in the remaining claims are directed to the same abstract idea of paying for a restaurant service using a mobile phone without interacting with the restaurant staff and are altogether lacking any "inventive concept."  Consequently, they too are patent ineligible under § 101.  *See Alice*, 134 S. Ct. at 2359-60; *see also Berkheimer*, 881 F.3d at 1365 ("Courts may treat a patent claim as representative" where there is no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim.")

## VII.   CONCLUSION

For the foregoing reasons, Zaxby's respectfully requests that the Court dismiss Analytical Technologies' Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Zaxby's requests dismissal with prejudice.

Dated: April 15, 2024

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

*/s/ Jason Mueller*
Jason Mueller [TBN 24047571]
Lauren A. Kickel [TBN 24132799]
909 Fannin Street, Suite 2700
Houston, TX  77010
T: 713.588.7000
F: 713.588.7050
Email: jmueller@vorys.com
Email: lakickel@vorys.com

Michael V. Messinger [448434DC]
1909 K Street NW, Suite 900
Washington, D.C.  20006
T: 202.467.8800
Email: mvmessinger@vorys.com

ATTORNEYS FOR DEFENDANT
ZAXBY'S FRANCHISING LLC

## CERTIFICATE OF SERVICE

On this 15th day of April 2024, I hereby certify that a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will effect service on all counsel of record listed below:

Donald R. McPhail                    *Attorney for Plaintiff*
Oblon, McLelland, Maier              *Analytical Technologies, LLC*
& Neustadt LLP
1940 Duke Street
Alexandria, VA 22314
dmcphail@oblon.com

*/s/ Jason Mueller*
Jason Mueller